# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:19-CV-189-DCK

| | |
|---|---|
| **TAMEKA WELCH,** | ) |
| **Plaintiff,** | ) |
| | ) **ORDER** |
| v. | ) |
| **ANDREW SAUL,** | ) |
| **Commissioner of Social Security,** | ) |
| **Defendant.** | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 12) and "Defendant's Motion For Summary Judgment" (Document No. 17). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that "Defendant's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. BACKGROUND

Plaintiff Tameka Welch ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for supplemental security income. (Document No. 1); see also (Document No. 14, p. 1; Document No. 18, p. 1). On or about February 14, 2015, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title XVI of the Social Security Act, alleging an inability to work due to a disabling condition beginning February 1, 2015. (Transcript of the Record of Proceedings ("Tr.") 1, 13, 95, 177). The Commissioner of Social Security (the "Commissioner" or "Defendant")

denied Plaintiff's application initially on November 6, 2015, and again after reconsideration on March 10, 2016.  (Tr. 13, 116, 119).  In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that you have health issues and your conditions result in some limitations in your ability to perform work related activities; however, we have determined that your condition is not severe enough to meet the disability requirements at this time. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work.

(Tr. 119).

Plaintiff filed a timely written request for a hearing on March 18, 2016.  (Tr. 13, 123).  On July 3, 2018, Plaintiff appeared and testified at a hearing before Administrative Law Judge Darrell Fun (the "ALJ").  (Tr. 13, 35-94).  In addition, Larry Littlejohn, Plaintiff's uncle, Deauna Froneberger, a vocational expert ("VE"), and Hannah Davies, Plaintiff's attorney, appeared at the hearing.  Id.

The ALJ issued an unfavorable decision on August 23, 2018, denying Plaintiff's claim. (Tr. 10-12, 13-30).  On September 5, 2018, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on April 18, 2019.  (Tr. 1-3).  The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request.  (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on June 13, 2019.  (Document No. 1).  On September 4, 2019, the parties consented to Magistrate Judge jurisdiction in this matter.  (Document No. 9).

Plaintiff's "Motion For Summary Judgment" (Document No. 12) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 14) were filed on

December 4, 2019; and the "Defendant's Motion For Summary Judgment" (Document No. 17) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 18) were filed on March 4, 2020. Plaintiff declined to file a reply brief, and the time to do so has lapsed. See Local Rule 7.2 (e).

Based on the foregoing, the pending motions are now ripe for review and disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that

it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between February 24, 2015, and the date of his decision.[1] (Tr. 30). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 29-30).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since February 24, 2015, her alleged disability onset date. (Tr. 15). At the second step, the ALJ found that asthma, obesity, post-traumatic stress disorder, schizoaffective disorder, depression with psychotic features, anxiety, and polysubstance abuse were severe impairments.[2] (Tr. 15). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 18).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform medium work activity, with the following limitations:

> she must avoid exposure to intoxicants, such as pharmaceuticals or alcohol, in the work setting, due to her history of substance abuse; she must avoid concentrated exposure to dust, odors, flumes or other pulmonary irritants in her working environments due to possible

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

> asthma exacerbation; she is restricted to jobs performing the simple, routine, repetitive tasks of unskilled work, but at a non-production pace and not in tandem tasks; she is able to respond appropriately to supervision, and is limited to only frequent interaction with co-workers and no more than occasional interaction with the public. Further, she is able to understand, remember and follow simple instructions and can adapt to simple and routine changes in work setting; she is restricted from any exposure to work situations involving violent conflict or crisis intervention. Finally, she is further limited to jobs that will permit her to be off task no more than 10% of the workday, in addition to normal breaks, due to side effects of medication, and that will permit her to have no more than one unscheduled absence from work each month.

(Tr. 21). In making his finding, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927." Id.

At the fourth step, the ALJ held that Plaintiff could not perform her past relevant work because she has no past relevant work. (Tr. 28). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 29). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a kitchen helper, a stores laborer, and a laundry laborer. (Tr. 29). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between February 24, 2015, and the date of his decision, August 23, 2018. (Tr. 30).

Plaintiff on appeal to this Court alleges that the ALJ erred by: (1) failing to perform a proper DAA analysis; (2) giving little weight to the medical opinion of Plaintiff's treating nurse

practitioner; and (3) in failing to explain Plaintiff's RFC. (Document No. 14, pp. 4-15). The undersigned will discuss each of these contentions in turn.

**A.     DAA Analysis**

In the first assignment of error, Plaintiff argues that the ALJ failed to perform a proper Drug Addiction and Alcoholism ("DAA") analysis pursuant to Social Security Regulation ("SSR")13-2p. (Document No. 14, p. 5). Plaintiff contends that although the ALJ made "several remarks indicating that he felt Ms. Welch's conditions were manageable as long as she was not using alcohol or marijuana, the ALJ failed to follow the correct procedure designed to properly parse these issues out under law." Id. at 6.

Plaintiff asserts that an "ALJ is only supposed to consider the impact of DAA once he has first determined whether the claimant would be disabled without considering the impact of DAA." Id. Plaintiff cites to an Eighth Circuit decision which held:

> Only after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addition, may he then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability. If this process proves indeterminate, an award of benefits must follow.

Id. (quoting Bruggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003)); see also McGhee v. Barnhart, 366 F.Supp.2d 379, 389 (W.D.Va. 2005) ("[A]n ALJ must first conduct the five-step disability inquiry without considering the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there would be no need to proceed with the analysis under 20 C.F.R. § 404.1535."). In the present case, Plaintiff contends that the ALJ did not "first determine[] whether the claimant

7

Case 1:19-cv-00189-DCK   Document 19   Filed 08/10/20   Page 7 of 15

would be disabled without considering the impact of the DAA" before undergoing a materiality analysis. (Document No. 14, p. 6).

Plaintiff additionally cited to multiple occasions where "the record reveals that Ms. Welch's significant mental symptoms persisted even where she was not using drugs or alcohol." Id. at 6-7. For instance, in February 2015, Dr. Koshes noted that, despite "staying clean and sober," Plaintiff had "ongoing issues with depression, felt confused and displayed in a flat affect." Id. at 7. In May of 2016, Plaintiff was noted to have been sober for three months. At this time, Plaintiff's symptoms included "depressed mood, diminished interest, trouble sleeping, fatigue, low self-worth, decreased appetite, trouble concentrating, restlessness and paranoid ideation." Id. In November of 2017, Plaintiff presented at the Phoenix Counseling Center and was admitted for bipolar disorder, severe with psychotic features. Id. at 8. During this stay and "despite subsequent abstinence from drugs and alcohol, she was still noted for racing thoughts, angry outbursts, rages in which she would curse and throw things, nightmares and flashbacks of past abuse." Id. Plaintiff therefore asserted that "the ALJ's conclusory finding that Ms. Welch's mental health limitations are not disabling as long as she abstains from marijuana and alcohol is not supported by the record." Id. at 9.

In response, Defendant asserts "the ALJ properly considered Plaintiff's polysubstance abuse in deciding, per the five-step sequential evaluation, that Plaintiff was not disabled." (Document No. 18, p. 5). Defendant first argues that, per SSR 13-2p, "if the ALJ finds that the claimant is not disabled, *considering all impairments, including DAA*, then the ALJ should deny the claim." Id. at 7. Defendant notes that if there is a finding of disability, then "we must *then* determine whether the claimant would continue to be disabled if he or she stopped using drugs or

8

alcohol; that is, we will determine whether DAA is 'material' to the *finding that the claimant is disabled*." Id. at 5 (citing SSR 13-2p).

Defendant further points to an Eighth Circuit decision for the proposition that the ALJ may, and indeed should, consider DAA-related impairments in the course of the applicable disability evaluation as an initial matter:

> In *Fastner [v. Barnhart*, 324 F.3d 981 (8th Cir. 2003)], we affirmed the ALJ's determination that even with the effects of alcoholism included, the claimant could not show disability. *Fastner* did not address what procedure is required when a claimant succeeds in the initial five steps. However, our holding today reaffirms our conclusion in *Fastner* that *the proper approach requires the ALJ not to exclude the effects of substance use disorders until after a preliminary finding of disability has been reached*.

(Document No. 18, p. 8) (quoting Brueggeman, 348 F.3d at 694 n.4).

Defendant additionally contends that "it does not make sense for Plaintiff to argue that she was harmed by the ALJ's consideration of her polysubstance abuse." (Document No. 18, p. 8). The ALJ determined that the polysubstance abuse was a medically determinable and severe impairment which limited her ability to do basic work activities. Id. Therefore, Defendant asserted, "[i]t stands to reason, then, that the ALJ found Plaintiff to have been more limited considering her polysubstance abuse than he would have done not considering her polysubstance abuse, such that the ALJ's consideration of Plaintiff's polysubstance abuse, all else equal, was *favorable* to Plaintiff." Id.

The undersigned agrees with Defendant that the ALJ did not err in considering Plaintiff's polysubstance abuse in his preliminary finding of disability. There is no requirement that an ALJ first determine whether the claimant would be disabled without considering the impact of DAA. See 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's

9

determination that the individual is disabled."). The relevant inquiry is "whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability" when there is a finding of disability and a medical history of substance abuse. 20. C.F.R. § 404.1535(a); see also McGhee, 366 F.Supp.2d at 389 (citing Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001); Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)).

Thus, the ALJ first conducts the five-step inquiry accounting for all the medical evidence. See McGhee, 366 F.Supp.2d at 389. The subsequent inquiry into whether the claimant would still be disabled absent the substance use occurs only if the ALJ determines that the claimant is disabled and there is medical evidence of substance abuse. Id; see also Delk v. Colvin, 2015 WL 13021474, at *7 (E.D.Va. Apr. 16, 2015). In this case, because the ALJ found, per the five-step sequential evaluation, that Plaintiff was *not* disabled considering all impairments, including the DAA, there was no need to proceed with the DAA analysis. (Tr. 30).

Additionally, the ALJ did not find that Plaintiff would have been disabled, due to her mental-health limitations, but for her use of alcohol and marijuana. Rather, the ALJ's findings pertain to Plaintiff's mental impairments overall, not only to her polysubstance abuse. For example, the ALJ found that "while claimant's allegations of severe mental impairment are partially credible, with consistent treatment and medical compliance, her mental functioning is sufficiently improved to allow her to perform the simple, routine, repetitive tasks of unskilled work." (Tr. 27). The ALJ also noted that "treatment notes from Anchor Mental Health, show that when the claimant was actively and consistently participating in mental health treatment, her functioning was vastly improved." (Tr. 25) (citing Tr. 567-645). As such, the undersigned is persuaded that that the ALJ conducted an adequate DAA analysis.

**B.     Opinion of Treating Nurse Practitioner**

Next, Plaintiff contends that "[t]he ALJ failed to justify his assignment of only little weight to the medical opinion of Ms. Welch's treating nurse practitioner ("NP") Ashley Triplett Navey ("Navey")." (Document No. 14, p. 9). On June 21, 2018, NP Navey issued an opinion regarding Plaintiff's mental health. Id. (citing Tr. 780-785). Among other limitations, NP Navey found that Plaintiff:

> was unable to meet competitive standards in the following areas: remember work like procedures, carrying out instructions, sustain an ordinary work routine, work in coordination with or in proximity to others without being distracted by them, perform on a consistent basis without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, deal with normal work stress and respond appropriately to changes.

(Document No. 14, p. 9). NP Navey additionally estimated that Plaintiff "would be off task 20% percent or more of the workday" and that she "would miss about four days per month on average." Id. Furthermore, Plaintiff notes that failure to properly consider NP Navey's findings is not a harmless error; "[t]he VE testified that that several mental limitations the NP outlined are disabling." Id. at 14.

Plaintiff argues that the ALJ erred by giving little weight to NP Navey's opinion without proper justification. Id. at 9. Plaintiff notes that the ALJ cited NP Navey's status as a nurse practitioner and not a medical doctor. Id. However, opinions from NPs are "important and must be evaluated on key issues such as impairment severity and functional effects when assessing a claimant's limitations." Id. at 11

Plaintiff further argues that NP Navey's assessment is indeed consistent with the medical records and opinion evidence. Id. at 11-14. For example, Plaintiff cited to treatment records from Dr. Shulka, who, in December of 2017, observed that Plaintiff "struggle[d] with agitation, anger, very dysphoric mood, AHs [auditory hallucinations] and poor judgement." Id. at 13 (citing Tr.

11

749). Plaintiff further asserts that NP Navey's findings of severe limitations are consistent with Plaintiff's regular volunteering at Adventure House. Plaintiff points out that Adventure House is "not a place of competitive employment," but rather it is "a daily activity program to rehabilitate individuals with mental illness." Id. In her role, Plaintiff performs front desk activities with "someone sitting there continually teaching her the job." Id.

In response, Defendant contends that the ALJ properly considered NP Navey's opinion. First, Defendant asserts that "Ms. Navey was not an acceptable medical source." (Document No. 18, p. 11) (citing 20 C.F.R. § 416.927(a)(1)) ("Medical opinions are statements from acceptable medical sources that reflect judgements about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical restrictions.").

Next, Defendant notes that "Ms. Navey appears to have relied heavily on Plaintiff's subjective reports" and found "Plaintiff to have been at least seriously limited with respect to every mental ability." (Document No. 18, p. 11) (citing Tr. 27-28). However, Defendant contends that NP Navey's opinion sharply differs from the "generally positive notes from her therapy sessions." Id. at 14 (citing Tr. 26, 701, 703, 705). For example, therapy notes from 2015 opine that "Plaintiff appeared to be physically and mentally stable." Id. at 12 (citing Tr. 25, 574, 627, 641). Notes from July 2016 indicate that Plaintiff "was fully oriented, had no symptoms of thought disorder or psychosis." Id. at 13 (citing Tr. 26). Defendant further cites therapy notes from March, April, and September 2017 in which Plaintiff was "able to identify positive coping skills that she was using to decrease her psychiatric symptoms." Id. at 14 (citing Tr. 26, 703, 705, 713). Defendant further asserts that the ALJ relied on the overall record to conclude that "Plaintiff's mental-health

symptoms improved with treatment and regular medication compliance." Id. at 19 (citing Tr. 27, 730-58).

Defendant finally notes that the ALJ opined that "Ms. Navey's form differs significantly from the claimant's own reports regarding activities she has been able to engage in." Id. at 20 (citing Tr. 28). For example, the ALJ noted that "she has done volunteer work in a soup kitchen. She works four hours a day, five days a week at Venture House." Id. at 21 (citing Tr. 28). Notably, Defendant asserts that "the ALJ did not find or indicate that Adventure House was a place of competitive employment or that Plaintiff's activity there constitutes competitive employment." Id. at 21 (citing Tr. 23).

The undersigned finds that the NP Navey's opinion was afforded proper weight. As argued by Defendant, the ALJ reasonably concluded that NP Navey's opinion was not consistent with other opinions, evidence, and Plaintiff's daily activities noted in the record. As such, the undersigned is persuaded that the ALJ afforded NP Navey's opinion proper weight.

**C.  Off-Task Limitations**

Finally, Plaintiff argues that "the ALJ's decision must be vacated because he failed to explain how he calculated his 'off task no more than 10% of the workday' figure in the RFC." (Document No. 14, p. 15). In contrast, Plaintiff notes that NP Navey opined that Plaintiff would be off task 20% of the workday. Id. (citing Tr. 784). Plaintiff asserts "[t]he ALJ's failure to explain how this figure was arrived upon was very harmful as the VE testified that if she were off task more than 10% of the time, she would be disabled from competitive employment." Id. (citing Tr. 92); see also Hollard v. Comm'r of Soc. Sec. Admin., 2018 WL 1970745, at *10 (D. Md. Apr. 25, 2018) (noting that "the ALJ, however, failed to explain how her factual findings translate into a finding that Plaintiff would be off-task less than 15% of the day. An explanation of how that

13

percentage was calculated is significant, as an increase could preclude competitive employment.") (internal citation omitted).

In response, Defendant argues that "substantial evidence supports the ALJ's time-off-task limitation." (Document No. 18, p. 22). Defendant contends that Plaintiff has not satisfied her burden of proving greater functional limitation. Id. For example, Defendant notes that, while "it is common ground that Plaintiff had some limitation in her ability to stay on task," Defendant notes that Plaintiff had an Associate of Arts degree – "which required a certain ability in attention, concentration, and persistence to obtain." Id. at 23 (citing Tr. 18, 51, 310). Defendant cites evidence that Plaintiff was attentive through various previous therapy sessions and at the hearing. Id. 22-23 (citing Tr. 701, 703, 705). Defendant further notes that while the ALJ gave "great weight to the State-agency doctors," the ALJ did not adopt their assessments in full. Id. (citing Tr. 28). "[T]he State-agency doctors did not include a time-on-task limitation in addition to normal breaks whereas the ALJ gave Plaintiff the additional 10 percent of the workday off task." Id. at 23-24 (citing Tr. 21, 102, 113).

Defendant concludes that "the ALJ's time-off-task finding is reasonable, is supported, deserves deference, and should be affirmed." (Document No. 18, p. 25). Moreover, Defendant argues that the ALJ is not required to have a "a precise mathematical formula for translating the evidence into a specific percentage of time off task." Id; see also Reed v. Astrue, 2011 WL 3895302, at 13* (N.D. Ill. Aug. 31 2011); Wennersten v. Colvin, 2013 WL 4821474, at *3 (W.D. Wis. Sept. 10, 2013).

The undersigned agrees that the ALJ's time-off-task limitation is reasonable and supported by evidence in the record. "A claimant has the burden to prove the extent of [her] functional limitations; it is not the ALJ's burden to prove a lack of limitations." Hendrickson v. Berryhill,

14

2018 WL 1431751, at *7 (W.D.N.C. March 22, 2018) (citing Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013)). In this case, Plaintiff did not meet the burden of proving further functional limitations. As discussed above, NP Navey's 20 percent time-off-task limitation was only given little weight. Moreover, the ALJ referenced evidence from the State agency medical consultants who did not limit Plaintiff to any time-off-task limitations. (Tr. 28) (citing Tr. 113). In sum, the undersigned is persuaded that the ALJ's time-off-task finding is reasonable and should be affirmed. See also Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (stating that where conflicting evidence allows reasonable minds to differ, the responsibility for making the decision falls on the ALJ).

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will direct that the Commissioner's decision be affirmed.

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Summary Judgment" (Document No. 12) is **DENIED**; the "Defendant's Motion For Summary Judgment" (Document No. 17) is **GRANTED**; and the Commissioner's determination is **AFFIRMED**.

**SO ORDERED**.

Signed: August 9, 2020

David C. Keesler
United States Magistrate Judge

15

Case 1:19-cv-00189-DCK   Document 19   Filed 08/10/20   Page 15 of 15